T.C. Memo. 2003-266

UNITED STATES TAX COURT

DAVID LEE SMITH AND MARY JULIA HOOK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 8747-00, 11725-02.     Filed September 11, 2003.

David Lee Smith and Mary Julia Hook, pro sese.

<u>Joan E. Steele</u>, for respondent.

MEMORANDUM OPINION

GERBER, <u>Judge</u>:  Respondent, on May 19, 2003, moved to
dismiss these consolidated cases[1] for petitioners' failure to
properly prosecute and to enter income tax deficiencies and
penalties (some in reduced amounts) by default against

_____

[1] These cases were consolidated for purposes of trial,
briefing, and opinion.

petitioners with respect to their 1992 through 1996 tax years. The trial in these cases had been scheduled for the Court's Denver, Colorado, Trial Session commencing May 12, 2003.[2] These cases had been set for a time and date certain of May 19, 2003. On the morning of May 19, 2003, these cases were called, and petitioners failed to appear. Respondent moved to dismiss both cases for petitioners' lack of prosecution. We shall grant respondent's motion to dismiss for lack of prosecution, and decisions will be entered by default. Given the serious consequences of this action, we find it appropriate to explain the events in these cases.

In the notices of deficiency for docket Nos. 8747-00 and 11725-02, dated May 18, 2000, and April 17, 2002, respectively, respondent determined the following income tax deficiencies and additions to tax for petitioners:

| Docket Number | Year | Deficiency | Additions to Tax | |
|---|---|---|---|---|
| | | | Sec. 6651(a)(1) | Sec. 6662 |
| 8747-00 | 1992 | $6,736 | none | $1,347 |
| 8747-00 | 1993 | 21,167 | $7,981 | 4,233 |
| 8747-00 | 1994 | 15,394 | 7,198 | 3,079 |
| 11725-02 | 1995 | 82,929 | 20,325 | 16,586 |
| 11725-02 | 1996 | 55,290 | 13,822 | 11,058 |

[2] With respect to docket No. 8747-00, the May 12, 2003, setting was a continuation of a trial that had commenced during spring 2002, resumed in summer 2002, and had been delayed to enable the parties to incorporate and consolidate docket No. 11725-02, which involves subsequent tax years for the same petitioners.

The following is a chronological summary of the history of these cases.

On August 15, 2000, petitioners filed a petition in docket No. 8747-00 (Case I) alleging that respondent erred in determining deficiencies in income tax and penalties for 1992, 1993, and 1994. By an April 10, 2001, notice of trial, Case I was set for trial on September 10, 2001, in Denver, Colorado.

On August 10, 2001, petitioners moved for a continuance on the grounds that petitioner Hook had learned during June 2001, that petitioner Smith (to whom petitioner Hook was married) was having an extramarital affair, and, as a result, they were living separately and not communicating. Petitioner Hook also stated, in the continuance motion, that she recognized "that continuances of trial dates are not routinely granted" and that additional time would permit petitioners "to prepare this case and be in a position to present it to the Court."

Respondent objected to a continuance, explaining that petitioners, during the pretrial period, including the time prior to petitioner Hook's June 2001 revelation, had been uncooperative and avoided any meetings with the Appeals officer or respondent's counsel, as required by the Court's standing pretrial order and

the Court's Rules.[3]  Respondent outlined a series of communications between petitioners and respondent wherein pretrial meetings were scheduled and, in each instance rescheduled or canceled by petitioners.

Petitioners' continuance motion was set for hearing at the September 10, 2001, Trial Session, at which time respondent moved for a dismissal due to petitioners' lack of prosecution.  At the hearing petitioner Hook advised the Court that, although she remained at the location described in the petition, petitioner Smith had moved to another State and probably did not receive service of the Court's Orders or respondent's motion to dismiss.  Petitioner Smith's address was provided to the Court, and all subsequent service of papers was made to petitioners Hook and Smith at their separate addresses.  Petitioners were permitted to file a written response to respondent's dismissal motion.  The Court, by an order dated October 12, 2001, denied respondent's motion to dismiss and granted petitioners' continuance motion.

By a November 28, 2001, notice setting case for trial, along with an attached standing pretrial order, petitioners were notified that Case I had been set for trial at the Court's Denver, Colorado, Trial Session scheduled for April 29, 2002.

---

[3] All section references are to the Internal Revenue Code in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

Six days before the scheduled April 29, 2002, Trial Session, the Court received from petitioners a document entitled "MOTION REQUESTING IMMEDIATE INFORMATION ABOUT TRIAL SETTING, AND, IF NECESSARY, MOTION REQUESTING NEW TRIAL SETTING". Said document was filed at the April 29, 2002, Trial Session as "Petitioners' Motion To Continue".

At the trial session, respondent filed a second motion to dismiss for lack of prosecution alleging that since the continuance from the September 2001 Trial Session, petitioners once more failed to meet or meaningfully communicate with respondent, as required by the Court's Orders and Rules. Respondent's counsel established that petitioners had been notified by mail on January 9, 2002, of the need for a meeting prior to the April 29, 2002, Trial Session and a February 5, 2002, conference date was set.

On the night of February 4, 2002, petitioner Hook left a message on respondent's counsel's telephone answering machine canceling the conference. During February 2002, respondent's counsel served discovery on petitioners, but they did not respond to the discovery requests. By a March 18, 2002, letter to petitioners, respondent's counsel again invited petitioners to confer on April 9, 2002, regarding the April 29, 2002, Trial Session. In an April 8, 2002, letter, petitioner Hook advised

respondent's counsel that she was not aware that Case I had been scheduled for trial on April 29, 2002.

At the April 29, 2002, Trial Session, the Court asked petitioner Hook if she was aware that her case had been scheduled for trial and she responded that when she heard about the trial setting (about 4 months before), she had written to the Court to inquire about the trial session and because she did not receive a response back from the Court, she ignored respondent's counsel's January and March notifications of the impending April trial date.

The Court's files maintained for Case I do not reveal any such letter from petitioner. In addition, the Court's records reveal that all Court notifications, Orders, etc., had been sent to petitioners Hook and Smith at their separate addresses by certified mail, and that the notices of trial and Orders sent by the Court to petitioners were not returned as undeliverable. Under the circumstances, the Court found petitioner Hook's explanations to be disingenuous. Accordingly, petitioners' explanation or excuses were not accepted and Case I was set for trial on May 2, 2002, at 9:00 a.m. The Court admonished petitioners that failure to appear would result in a dismissal or default of their case.

On May 2, 2002, petitioners Hook and Smith appeared and attempted, as a preliminary matter, to offer four boxes of

records, each containing hundreds or perhaps thousands of documents on the ground that respondent had refused to stipulate after petitioner had proffered them on May 1, 2002, only 1 day before the trial date.

Respondent's counsel explained that she refused to blindly stipulate four boxes of materials without some explanation or understanding of the individual documents and their relevance and/or relation to the controverted expense or income items. The adjustments for petitioners' 1992, 1993, and 1994 tax years involved: Underreported gross receipts and disallowed expenses and depreciation on Schedules C (Profit or Loss From Business), income from a distribution from a retirement account for 1993, increase and decrease of reported rental income, disallowance of miscellaneous itemized deductions, self-employment tax, and additions to tax under sections 6651(a)(1) and 6662. The adjustments involved numerous individual items.

During the May 2, 2002, hearing, the Court inquired of petitioners as to the organization of the contents of the four boxes. Petitioner Smith, in response, explained that the documents were not necessarily in chronological order and that individual folders did not necessarily relate to any particular adjustment in the notice of deficiency. The Court inspected one of the numerous documents, a folder, and found that it contained a large volume of loose papers and miscellaneous documents.

It was apparent to the Court that the boxes could not be received in evidence in the state that they were being offered by petitioners. The Court required the parties to organize the records in a manner that would provide for an orderly and meaningful trial, including any decisions about whether such documents were relevant and/or otherwise admissible into evidence.

The trial was recessed for 2 hours, and the parties were required to go through the individual documents and to organize them in some reasonable manner. The trial was reconvened after 2 hours, and it appeared to the Court that the parties had made a limited amount of progress in organizing the documents, so the parties were required to continue their organization of the documents and the stipulation process until July 15, 2002, at 10:00 a.m. (approximately 60 days later) when the trial would resume.

On July 15, 2002, upon the resumption of trial, one of the first matters brought to the Court's attention was respondent's Motion to Dismiss For Failure To Properly Prosecute, which had been held in abeyance from the April 29 and May 2, 2002, hearings. In a July 15, 2002, supplement to his earlier motion to dismiss, respondent, after reiterating the history up through May 2, 2002, stated that meetings with petitioners concerning the organization and stipulation of the contents of the four boxes of

records had not progressed beyond the limited progress that had been made at the May 2, 2002, Court-supervised session, with the limited exception of one adjustment involving the amounts claimed for State income tax for 1992, 1993, and 1994.

Accordingly, the Court spent most of July 15, 2002 supervising the stipulation process and receiving documents into evidence. This waste of the Court's time was precipitated by petitioners' failure to comply with the Court's Rules and Orders that they meet with respondent and propose evidence for stipulation, even though respondent had offered to meet with petitioners on several occasions.

On July 16, 2002, after the examination of the first witness had begun by petitioners, it became apparent to the Court that a further exchange of documents and information was required by the parties before the witnesses could be properly examined. The Court, for the third time, recessed Case I (for approximately 30 days) until August 19, 2002. In addition, the Court provided the parties with guidance as to the material that must be exchanged between the parties and as to the proper organization of those materials.

On August 19, 2002, the trial of Case I resumed and, after some preliminary matters, a witness was recalled to the stand. At that point, respondent moved for a continuance on the ground that a second case involving similar issues for petitioners' next

2 taxable years would soon be docketed, and it would conserve the parties' and Court's time to try both cases together. Petitioners joined in the motion to continue on the grounds that it would provide time for the parties to further refine documentary evidence.

A continuance was granted, and the Court provided the parties with additional guidance regarding trial preparation, including an admonition to spend the time in recess to prepare the two cases for trial, including organizing documents and interviewing witnesses.

In a status report filed on November 19, 2002, respondent advised that petitioners' 1995 and 1996 tax years were now in issue (Case II) and that petitioners had been requested in writing, as early as October 15, 2002, to begin the trial preparation process. The adjustments to petitioners' 1995 and 1996 tax years are substantially the same as those for petitioners' 1992, 1993, and 1994 tax years.[4] As of the date of respondent's report, petitioners had not contacted respondent regarding Case I or Case II.

On December 13, 2002, the Court's notice setting cases for trial on May 12, 2003, along with a standing pretrial order was issued to the parties ordering, among other matters, the parties

---

[4] The examination of petitioners' 1992, 1993, and 1994 tax years began during November 1995 and the examination of petitioners' 1995, and 1996 tax years began during November 1997.

to fully cooperate in the stipulation of facts in accord with the Court's Rules and to comply with the requirements of the Court's Rules and Orders for trial. Shortly thereafter, respondent moved to consolidate Case I and Case II, and the Court ordered petitioners to respond or object by January 31, 2003. Petitioner, in a motion filed February 10, 2003, moved for additional time to respond, and in a response dated February 19, 2003, petitioners contended that the cases should not be consolidated because they would not be able to prepare for trial by May 12, 2003. The consolidation motion was granted, and Case I and Case II were not continued from the May 12, 2003, Trial Session.

On April 9, 2003, respondent moved that the trial of the consolidated cases be set to begin on a date certain of May 19, 2003 (the second week of the scheduled calendar in Denver, Colorado), in part to accommodate nine Government employees whose testimony had been subpoenaed by petitioners. In their April 25, 2003, response to respondent's motion, petitioners requested that the case be scheduled for a date certain on or after October 1, 2003. As a reason for the extended time, petitioner Hook explained that other matters connected with her law practice had been or were being scheduled during May and through September of 2003. The trial of both cases was set by an Order, dated April

28, 2003, for a time and date certain of 10:00 a.m., May 19, 2003.

On May 16, 2003, petitioners attempted to file a motion entitled "Petitioners' Emergency Motion To Strike Trial Date And Reset Trial" in Washington, D.C., even though petitioners knew that the Court was sitting in Denver, Colorado, for a 2-week period beginning May 12, 2003. In that Motion, it was alleged that each petitioner had been debilitated for approximately 2 weeks and that they were suffering from different illnesses. In their untimely motion, petitioners advised that they would not appear on May 19, 2003, at the scheduled trial.

The trial Judge was not made aware of petitioners' "Emergency Motion" until immediately before the scheduled May 19, 2003, trial setting. On the morning of May 19, 2003, petitioners' cases were called, but petitioners did not appear or send anyone in their stead. Even though petitioners failed to appear, 10 witnesses (who were current and former employees of respondent) appeared pursuant to subpoenas issued by petitioners. Petitioners failed to advise the witnesses not to appear, even though petitioners knew they did not intend to appear themselves. Petitioners did not comply with the Court's Order or Rules and Procedures as fully outlined in respondent's Motion to Dismiss For Failure To Properly Prosecute, filed on the morning of May 19, 2003.

The Court took respondent's Motion under advisement and, by Order, permitted petitioners until July 3, 2003, within which to show cause why respondent's Motion should not be granted and a decision be entered against petitioners. In a response to an order to show cause filed July 3, 2003, petitioners, in essence, presented the following reasons why respondent's Motion should not be granted:

(a) Insufficient time to prepare for trial.

(b) Petitioners are lawyers and are not paid to work on their own cases.

(c) Each petitioner became ill with a different illness, and in addition, both had laryngitis and were therefore unable to speak or appear in Court.

(d) When respondent moved for a continuance the Court was disposed to grant it.

### Discussion

Rule 123 of this Court's Rules of Practice and Procedure provides that the Court may, at any time, dismiss a case and enter a decision against a petitioner. As described above, petitioners have, on several occasions, not been prepared for trial, although they have been given several opportunities and almost 2 years to do so. In addition, petitioners have ignored this Court's Orders and Rules and protracted these proceedings. For the reasons stated in respondent's Motion To Dismiss For

Failure To Properly Prosecute and the record and transcripts in these cases (as described in the historical summary set forth above) respondent's Motion will be granted and decisions entered for respondent.[5]

"The sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a careful exercise of judicial discretion." Durgin v. Graham, 372 F.2d 130, 131 (5th Cir. 1967); Freedson v. Commissioner, 67 T.C. 931, 937 (1977), affd. 565 F.2d 954 (5th Cir. 1978). Petitioners, both of whom are experienced practicing lawyers, ignored this Court's Orders and process. Further, they have failed to comply with Pretrial Orders and Court Rules requiring the preparation of their cases, including the requirement to meet and/or work with counsel for respondent to exchange documents and information, stipulate facts, and otherwise to prepare for trial. Since September 2001, petitioners were provided with additional time to remedy their failure to comply. In each of the numerous instances that petitioners' cases were called for trial, or trial was resumed, they failed to correct or to remedy their prior failures, and little or no progress had been made from the time before, even though the Court took great pains to detail what was

---

[5] Respondent, in his Motion for dismissal under consideration seeks the entry of decisions for deficiencies that, in some instances, are reduced in amount from the amounts determined in the notices of deficiency.

expected. Petitioners have been admonished that their failure to prepare for trial and/or comply with this Court's Orders, Rules and Procedures would result in a default.

In each instance where petitioners have attempted to provide explanations of their failure to properly proceed and/or prosecute their cases, their explanations were found to be disingenuous and without foundation. For example, petitioner Hook stated that she did not believe that her case was set for trial, even though so advised by respondent on two different occasions. Petitioner Hook, a lawyer, suggested that it was sufficient that she sent a letter to the Court asking whether her case was set for trial. No such letter has been located. Moreover, none of the Court's Notices of Trial, Orders, Pretrial Orders, and related matters, that were served on and mailed to petitioners has been returned for failure of delivery. Petitioners, who are practicing lawyers, could have easily determined the status of their cases.

On December 13, 2002, petitioners' consolidated cases were scheduled for trial at the Denver, Colorado, Trial Session that commenced on May 12, 2003. Petitioners were well aware of that date, and yet they did not meet with respondent's counsel to prepare their cases for trial. Petitioners did not advise respondent or the Court that they did not intend to appear until the eve of trial. Curiously, both petitioners claimed to have

different debilitating illnesses which they alleged made them unable to appear for the longstanding trial date.  We must note that petitioners alleged that the onset of their physical conditions began more than 2 weeks prior to the trial session. It is also quite curious and hugely coincidental, that both petitioners contracted laryngitis, in addition to their debilitating illness, so that they were "conveniently" unable to orally communicate with the Court.

Although petitioner Hook has filed some responses to the Court's Orders and/or respondent's inquiries of petitioners, petitioner Smith has not responded to any orders, notices, or inquiries.[6]

"There must come a time when even at some risk of error, a court is justified in accepting as conclusive a series of apparent subterfuges."  Freedson v. Commissioner, 565 F.2d at 955

---

[6] Respondent's counsel pointed out that petitioner Smith has been sanctioned by other courts.  In particular, the Court of Appeals for the Tenth Circuit stated that

> Mr. Smith has a long history with this court marred by repetitive, frivolous filings and general abuse of the judicial process.  This well-documented course of misconduct began during his tenure as a practicing attorney, prompting the imposition of numerous monetary sanctions, his suspension from Tenth Circuit practice, and ultimately his disbarment by this court.   * * *

Howard v. Mail-Well Envelope Co., 150 F.3d 1227, 1231 (10th Cir. 1998).  The Court of Appeals also noted that Mr. Smith had been disbarred by the U.S. Supreme Court.  See In re Disbarment of Smith, 516 U.S. 984 (1995).

(quoting <u>Katz v. Commissioner</u>, 188 F.2d 957, 959 (2d Cir. 1951), affg. a Memorandum Opinion of this Court).  Petitioners have had numerous opportunities to present the merits of their cases.  At this juncture, after three false starts and a total of five separate opportunities to present the merits of their claims, petitioners have not meaningfully done so.  The taxable years in question are 1992 through 1996, and these cases have been pending and/or docketed for a sufficient amount of time for petitioners to have prepared for and presented the merits of their cases.

Although petitioners alleged that the period for assessment of any deficiency expired, respondent has shown that at the time the notices of deficiency were mailed, the period for assessment remained open due to extensions of the assessment period agreed to by the parties.  In particular, respondent provided the Court with copies of petitioners' income tax returns which reflect the filing dates and copies of agreements extending the periods for assessment to a time beyond the date the notice of deficiency was issued.

Respondent has also shown that he does not bear the burden of proof, burden of going forward with evidence, or burden of production on any other matter in issue.  In that regard, the examination of petitioners' 1992, 1993, and 1994 tax years began November 1995 and the examination of petitioners' 1995 and 1996 tax years began November 1997.  Section 7491 applies to cases in

which the examination commenced after July 22, 1998. Accordingly, that section does not apply to the taxable years before the Court. In their response to respondent's motion to dismiss and this Court's Order to Show Cause, petitioners offer little to refute respondent's allegations.

Respondent's frustration with petitioners is longstanding, and several motions for dismissal have been filed, the first of which was during October 2001. Petitioners subpoenaed at least 10 witnesses, all of whom appeared on the specific trial date of May 19, 2003. These same witnesses also had been required to appear on two different occasions during summer 2002. Petitioners did nothing to notify the witnesses not to appear. At some point during this extended process, petitioners must accord these proceedings some priority over their other affairs or risk dismissal. <u>Montgomery v. Commissioner</u>, 367 F.2d 917 (9th Cir. 1966).

Accordingly,

<u>Respondent's Motion To Dismiss for Failure To Properly Prosecute in Docket Nos. 8747-00 and 11725-02 will be granted, and decisions entered for respondent</u>.